Good morning. May it please the Court. My name is Jeffrey Willens, Counsel for the Appellant and Plaintiff. This case concerns the Driver Privacy Protection Act and a very disturbing situation where third parties acquire personal information from motor vehicle records and then use it for marketing purposes. That's what happened in this case. There's been a number of cases that have come down recently. Forgive me, Counsel. I thought that Mr. Andrews voluntarily disclosed his information to AutoSource and that that was the source of the information in his case. Is that correct? If you mean the ultimate source, the original source? Yeah, the original source. The original source was the Department of Motor Vehicles. Okay, but he gave that information to AutoSource, right? He sure did, and that's what distinguishes this case from the Best Buy and some other cases they cite, which are contrary. We've cited a number of cases, and I do want to invite the Court's attention, that I did a Rule 28J supplemental authority because in other cases — So both sides have cited lots of district court cases, but we're not bound by any of them. So we need to get to the right answer as an appellate court now, right? That's correct, and I would hope that that correct answer will be one to apply the law literally, as it's written, unless the difficult burden of showing that by doing so it would lead to absurd or contradictory results that would undermine what the legislature or the Congress had in mind. Isn't that what we're really wrestling with here? It is, and I'd like to address the circumstances because a lot of courts do a very cursory analysis, and they say, well, Congress couldn't have intended this to apply to anyone other than the DMV selling the information directly. And that's simply not what Congress wrote, and there's nothing ever cited. There's no legislative history or anything ever cited to support that type of argument. Instead, they say it would be a parade of horribles. But if you look at the circumstances, it's easy to separate out what happened in this case and in some of the other cases which have come down on our side, which are mostly what I call personal injury lawyer trolling cases, where they buy accident reports and get the personal information off of that. The personal information came from the driver license, which you're required to give the officer in an accident. The driver license, we say, is a motor vehicle record. They disagree on that point as well. But if you polled 100 people on the street and you asked them, is the driver license a motor vehicle record, I think every one of them would say it is. I'm not sure that's right. I mean, it seems like a motor vehicle record is probably something that is at the DMV. Once you have your license in your pocket, how is it still a motor vehicle record? Because it's issued by the Department of Motor Vehicles. A lot of people think that – I don't know if anyone really thinks this, but they may say it's my driver license. It's not your driver license. Well, why not? It tells us that it's not. Well, it's printed right on it. It says issued by the state of California. Right, issued and then given to you. It's the property of the state. And you pay for it. You pay a tax or fee to acquire. You don't purchase it. They can take it away from you under any number of circumstances. And if you lose it, you can't go print out another copy yourself anywhere. You have to get it from the official source. So the driver license is absolutely the property of the state of California, and it's issued by the Department of Motor Vehicles. If we don't agree that that's what the Congress intended, you have a problem, right? It seems like your whole case focuses around what the role is of the actual driver's license. Is that incorrect? My case focuses on what the meaning of the language pertaining to a driver license, a registration, a title, or identification card. I say, which I think is common sense, that if you say something is pertaining to something, it's trying to broaden the scope of something rather than narrow it. But when you look at what Congress was trying to achieve, it seems like it had a problem with people being able to contact the Department of Motor Vehicles, get a whole bunch of personal information from them by paving some kind of a fee. The driver's license was not even part of it. They might have gotten it by computer or whatever. And they wanted to stop that or at least regulate that. Isn't that the primary purpose of the law? I don't think there's a primary purpose other than what it says in the title, which is privacy protection, driver privacy protection. Right. They addressed one issue, which was a scenario that came up with the actress, Rebecca Schaefer, where someone got a registration document from the DMV, and they used that to stalk and murder her. But that wasn't all they did. If that's all they wanted to do, they would have stopped at 2721 of 18 U.S.C. They did not. They went on and they have 2722, 2723, and 24, which creates a civil cause of action that is not at all related to the DMV. This is a private cause of action, not against the DMV, but against any person who knowingly uses personal information from a motor vehicle record for any non-permissible purpose. And everyone agrees marketing solicitations is a non-permissible purpose. So you're correct if you may be correct as to what motivated them to act. But once they decided to act, they acted broadly and absolutely did not limit it to. But you do agree that when we construe this statute that we don't want an absurd result, right? Absolutely. But I also insist that the statute cannot be rewritten to attempt to speculate as to what would have been a better way for the Congress to have done it or a clearer way. And in this case, the Congress wrote words that are very clear and direct. So it seems like Section 2725.1 lists items that usually are in the possession of the driver. So your license, your registration. Why? And then it has pertains to. So why don't we think the records at the DMV that pertain to the things you've got in your possession are the records, and the things you have in your possession are yours now? I mean, if someone finds a driver's license, they don't bring it back to the DMV. They bring it back to you. Well, they may not know where you are. They give it to someone, maybe the police. Well, if your address is on it. I mean, if I found a driver's license, I would bring it back to the person or call the person. I wouldn't take it to the DMV and say, this is your record. That's kind of ridiculous, isn't it? It doesn't matter where they would return it. Maybe they return it to the police because the person lives in a different city, not in a flight or another city. Okay, so maybe you return it to the police, but the police aren't the DMV either. I mean, I can't imagine anyone taking a driver's license to the DMV. I understand that point, but I'm not sure why that has anything to do with it. They'd have to wait in line. Yes, you can mail it to the DMV if you wanted to. But my point is not where you would return a lost item. But your argument turns on everyone understanding that the thing in your pocket is a DMV record that belongs to the DMV. It doesn't it? Is there any other way to read the statute that doesn't have your argument determined based on that idea in your argument? It depends on reading the words pertains to and either deciding to use that as a broadening term or a constricting term. It makes no sense to say that the Congress intended to allow a stalker to obtain information off a driver license without any violation, but yet if they obtain information from a duplicate license issued by the DMV, that would be a violation. That's the type of arbitrary distinction that makes no sense. What if I took, say a judge gave me her driver's license, and I took that and I typed on my computer everything that was on her license, and then I gave it to SiriusXM, would that be a violation? If she gave you the driver license and you entered it and presumably somehow you consented to her, she consented to you entering the information into your computer system, and then you sold it or got rid of it to a marketer, that would absolutely be a violation. That's exactly what the point of this law is, to prevent indiscriminate exploitation of personal information that was obtained under maybe a legitimate circumstance and then misused. If you go to a hotel and you give them your driver license, I don't see a big problem. You go to Best Buy, you give them your driver license. If they give it to a third party, who you don't even know who it is, or that it happened, and then they exploit your personal information, either for criminal purposes or just for marketing purposes, that is... So you're saying in the example that we talked about, if I have Judge Friedland's license, I write it down, I then go to Marriott, and I want to go there and I want to register under Friedland. And they then take that information and they give it to a marketer that I violated the act, or the hotel's violated the act? Well, if you used it to try to get a room without consent, I would say you probably violated the act, too. I presume that's not why she gave it to you, but that is why she gave it to you. And the hotel used it to sell it to a third party for marketing purposes, yes, I would say that's a violation. But if they used it to contact her, I would say that's not a violation because she gave it, or you gave it, for the purposes of the hotel contacting her. But does Michelle Friedland, in my example, have to have an intention about why she gave it to us? So say, for example, we were going to go to a concert and we needed the information. She gave it to me, I write it down, and I give it to the entry person, but then they take it from there. It doesn't really matter, does it, that she has an intention. We do or do not. You're just saying if the person who ultimately gets the information uses it for marketing, there's a violation. I'm saying that it doesn't matter whether you're using your own driver license or someone else's with consent. That doesn't change the analysis. When you give it to someone for a purpose that's permissible and they use it for that purpose, it's fine. If they sell it or somehow it gets into the hands of a third party who uses it for an impermissible purpose, that's a violation. Okay. I think we have your point. Any other questions anybody has? All right. Thank you very much, Counsel. Let's hear from Sirius XM. How many channels are you going to give us today? Good morning, Your Honors. I'm Shai Dvoretsky with Jones Day representing Sirius XM. Sirius XM did not get any information about Mr. Andrews from the DMV or from anybody else who got information from the DMV. The Driver's Privacy Protection Act targets only those who acquire or disclose information that's ultimately sourced from the DMV's records, not those who acquire similar information from other sources such as, in this case, the drivers themselves. The text tells us that. The DPPA's primary prohibitions cover only DMVs and those who obtain information from them, and the parallel right of action simply effectuates that basic prohibition. Every circuit that's considered the question, the Second and Eleventh Circuits, have read the statute that way. That result is consistent with the statute's history and purpose. Congress passed this statute to stop DMVs from disclosing sensitive information, not to criminalize businesses that market from data that customers provide to them. And Mr. Andrews' contrary interpretation would criminalize wide swaths of ordinary conduct, as the exchange this morning shows, I think including hypothetical conduct by Judge Friedland and Judge Smith. I'm going to talk to her about that. On Mr. Andrews' theory of the case, if Judge Friedland found somebody's driver's license and contacted that person to return it, she used information that came from a DMV record. And under Mr. Andrews' theory of the case in response to questioning this morning, if Judge Friedland gave Judge Smith her information, that would be authorized. That's okay. But Judge Smith, if you then turn that over to somebody else, both you and anybody who uses that information committed a crime under the statute. That is not what the text says. That's not what Congress intended. And that's simply not a plausible reading of how this statute works. If you look at the text, Sections 2721 through 2724 have to be read together. You can't cherry-pick them individually. And when you read them from beginning to end, 2721 starts out prohibiting state DMVs and their employees from disclosing information except for certain purposes. 2722 is essentially the other side of that transaction. It talks about the person who obtains information from the DMV and, again, harkens back to the same purposes that 2721 says are either legitimate or illegitimate. 2723 creates a criminal penalty for violating the prohibitions in 2721 and 22. And 2724 creates a civil cause of action for violating those same prohibitions. So all of this has to be read together. And the key point is that all of this targets those who disclose or acquire information that is sourced from DMV records. And from your perspective, reading the statute that pertained to doesn't change the result. The information has to come from the DMV, right? It has to come from a motor vehicle record and pertains to helps establish that a driver's license itself is not a motor vehicle record, because if it were, under Mr. Andrews' theory, you have to read the driver's license as pertaining to itself. A motor vehicle record is a record that pertains to a motor vehicle's operator's permit. The operator's permit, the license itself, doesn't pertain to the permit. It is the permit. So the pertains to language helps to narrow the scope of this statute and prevent the sorts of untenable results that we're talking about here. In terms of what actually happened in this case, I think it also is important to understand the facts here. Mr. Andrews provided his street address orally, so no connection at all to the DMV there. The only information that he provided using his driver's license was his name. So under Mr. Andrews' theory of the case, SiriusXM's civil and potentially criminal liability turns on whether he chose to tell the car dealer his name orally or, as I sometimes do with a somewhat difficult name, by showing my driver's license. That, again, is simply not what the statute that Congress passed. The post office box, he alleges that that information came from the driver's license, but there's unrebutted evidence in the record that actually SiriusXM got that information from a third party called Epsilon, which we contract with to update addresses. So that didn't come from any DMV record. And then lastly, he claims that he provided all that information plus his phone number on a form that eventually may have been filed with the DMV, but that was not a DMV record, this Form 262. So does something stop being a DMV record when it's given to the driver? I'm trying to figure out. So I think you have a good argument here that license registration, once they're in the possession of the driver, can't really be DMV records. It just doesn't make sense. But, like, if I'm doing a mail-in renewal of my license, and my license is actually at the DMV and someone steals it from the DMV while it's still there, is that a violation of the statute? So they steal it and they use it for identity theft from the DMV outbox or something at the DMV where they're going to mail it to me. Someone comes and steals my license from the DMV. It's a license, but it's at the DMV still. Is that a violation? If somebody stole something from the DMV and it was in the DMV's files, kind of an odd hypothetical. Clearly that would be some sort of a crime. That is some sort of theft or misappropriation. Whether the driver's license, when it's in the DMV's possession, is its record, I still think it probably wouldn't be under the pertains to language of this definition. Yeah, I'm asking the question because of the pertains to, because I'm not sure I'm persuaded that the pertains to is really a good argument to prevent the hypo, that if there is a license that's at the DMV waiting to be mailed and someone steals it, it can't be a violation. But I also think even apart from the pertains to language, the general understanding of what a record is, it is information, a document, paper that is maintained by the government, not something that is maintained by others. And so arguably under that sort of commonsensical understanding of what a record is, maybe the license could be considered a record when it's something that the DMV is maintaining and producing, but it's certainly not once it's handed over to you. And even if it were conceivably a record, if you request it, at that point, it has been disclosed to you and permissibly so. And if you choose to redisclose it, somebody else's use of that information who later obtains it doesn't depend on what your subjective intent was when you redisclosed it. In other words, Mr. Andrews voluntarily disclosed information to AutoSource. At that point, if somebody else gets that information from AutoSource, their criminal liability doesn't depend on their ability to discern what Mr. Andrews intended when he gave it to AutoSource or how far he intended it to be used. It seems like you probably don't need us to reach this sort of voluntary disclosure point, though. If we were to say that once a license or registration leaves the DMV and goes into the driver's possession, it no longer is a DMV record, that's probably all you need us to say, right? Yes. That certainly resolves the issue of whether there is any information to source. In your view, the Second and Eleventh Circuit have already reached that position, right? They have in the prisoner case and the Best Buy case that we cited in our brief. Are there any circuits to your knowledge that have gone a different way that you don't like? No. Okay. The only circuit courts that I'm aware of that are on point are those two circuits. Okay. Okay. Nothing? Apparently we have no other questions unless you have more you'd like to tell us. Thank you. Okay. Thank you. Thank you, gentlemen. We appreciate your argument. I don't think you have any time left. Maybe he does. He does. I'm sorry. I apologize. You've got time. Thank you. Well, I can see I have a difficult task here, trying to convince you that a driver license is a motor vehicle record, and it doesn't matter whether it's in your possession or at the DMV's. In fact, what counsel just said shows the absurdity of trying to say the physical location of a document. What if the DMV had a printout of your driving history? I think they would agree that's a driver. That's a motor vehicle record, right? It's a printout. And what if you got that motor vehicle record in your possession as a private citizen, and someone asked to see it for some reason, you give it to them, and then they sell it to an unauthorized third party? Let me ask you to do a wrap-up point. I think you actually were in a negative time period. I'm sorry. And there is a trap door right by that. But why don't you just wrap up. Final sentence, whatever you want. This is my final sentence. Rather than trying to guess, why don't we just follow the express language of the statute and apply it literally? And there's nothing in the statute that says the record has to come from the DMV into the hands of the third party who misuses it. Okay. Thank you. Thank you, counsel, all, for your argument. The case just argued is submitted, and the court will stand in recess for the day.
judges: M. Smith, Friedland, Bastian